# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ALLIANCE FOR THE WILD ROCKIES,          )
                                        )
        Plaintiff,            )
                                        )
        v.                    )      Civil Action No. 17-654 (RBW)
                                        )
COUNCIL ON ENVIRONMENTAL                )
QUALITY,                                )
                                        )
        Defendant.            )
_____)

## ORDER

      The plaintiff, Alliance for the Wild Rockies, brought this Freedom of Information Act

("FOIA") action against the defendant, Council on Environmental Quality, because of the

defendant's allegedly improper withholding of the documents sought in its FOIA request.  See

Complaint for Declaratory and Injunctive Relief ("Compl.") ¶ 1.  Currently pending before the

Court is the Plaintiff's Motion for Attorneys' Fees and Costs ("Pl.'s Mot.").  Upon careful

consideration of the parties' submissions,[1] the Court concludes that it must deny the plaintiff's

motion.

## I. BACKGROUND

      On June 16, 2016, the plaintiff submitted to the defendant, which is an "agency within

and a component of the Executive Office of the President [('Executive Office')]," Declaration of

Howard C. Sun ("Sun Decl.") ¶ 1, ECF No. 17-1 (corrected version), a FOIA request seeking "an

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum in Support of Its Motion for Attorneys' Fees and Costs ("Pl.'s Mem."); (2) the defendant's Opposition to Plaintiff's Motion for Attorneys' Fees ("Def.'s Opp'n"); and (3) the Plaintiff's Reply in Support of Motion for Attorneys' Fees and Costs ("Pl.'s Reply").

electronic copy of all correspondence between [the defendant] and the Idaho Panhandle National Forest [ ] on the Tower Fire Salvage and Reforestation Project," Compl. ¶ 10.  On June 20, 2016, the defendant sent the plaintiff an e-mail, acknowledging receipt of the plaintiff's FOIA request and requesting additional information necessary to process the plaintiff's request.  See Pl.'s Reply at 2; see also Sun Decl. ¶ 6.  That same day, the plaintiff responded to the defendant's request by, inter alia, providing the additional information.  See Pl.'s Reply at 2; see also Sun Decl. ¶ 7.

Having failed to receive a response from the defendant within thirty days of the defendant's receipt of its FOIA request, the plaintiff contacted the defendant via telephone on September 8, 2016, and inquired about the status of the defendant's processing of its FOIA request.  See Pl.'s Reply at 2; see also Sun Decl. ¶ 8.  The defendant advised the plaintiff that it estimated being able to respond to the plaintiff's FOIA request by September 30, 2016.  See Sun Decl. ¶ 8.  Additionally, on that same day, the defendant submitted a search request related to the plaintiff's FOIA request to the Office of Administration (the "Office"), see Sun Decl. ¶¶ 8, 18, which is another component of the Executive Office that is tasked with "conduct[ing] e-discovery searches," Sun Decl. ¶ 2.  On October 19, 2016, the Office completed its search, which revealed no responsive records; however, the Office failed to communicate its results to the defendant.  See Pl.'s Reply at 2; Sun Decl. ¶ 18.

On January 27, 2017, the defendant contacted the plaintiff via telephone and informed the plaintiff that it was still processing the plaintiff's FOIA request.  See Pl.'s Reply at 2; see also Sun Decl. ¶ 12.  On January 31, 2017, the defendant coordinated with the Office for another search using broader search terms.  See Pl.'s Reply at 2; see also Sun Decl. ¶ 12.  Thereafter, on February 8, 2017, the defendant inquired about the status of the Office's processing of its second

search request, see Pl.'s Reply at 2; see also Sun Decl. ¶ 13, and upon learning that the Office

had been unable to start processing the search, on February 17, 2017, the defendant notified the

plaintiff via telephone that it was still processing the FOIA request, see Sun Decl. ¶ 13.  On

February 10, 2017, the Office completed its processing of the second search request, "but had not

yet ingested the raw results into [the defendant's] newly acquired document review software."

Id. ¶ 18.

On March 24, 2017, the defendant asked the Office about the statuses of the processing

of its outstanding searches, see Pl.'s Reply at 2; see also Sun Decl. ¶ 14, and the Office

responded that the searches were still being processed, see Sun Decl. ¶ 14.  On April 13, 2017,

the plaintiff filed its Complaint with this Court, see generally Compl., and on May 4, 2017, the

defendant notified the Office that the plaintiff had filed its Complaint against the defendant

regarding the processing of the plaintiff's FOIA request, see Pl.'s Reply at 2; see also Sun Decl.

¶ 16.  Six days later, on May 10, 2017, the Office informed the defendant that the second search

request discovered two records, neither of which was determined to be responsive to the

plaintiff's FOIA request.  See Sun Decl. ¶ 17; see also Pl.'s Reply at 2.  On May 24, 2017, the

defendant advised the plaintiff of these results, see Pl.'s Mem. at 2 (stating that there were "no

responsive records"), and on June 21, 2017, the defendant provided the plaintiff a signed

declaration attesting to these results, see Pl.'s Reply at 2; see also Sun Decl. ¶ 26.  Two days

later, on June 23, 2017, the plaintiff filed a notice on the Court's docket indicating its intention to

voluntarily dismiss this case and to seek attorneys' fees and costs, see Notice of Voluntary

Dismissal at 1, ECF No. 12, which are now being sought by the plaintiff.

## II. ANALYSIS

Under the FOIA, a district court "may assess against the United States reasonable

attorney fees and other litigation costs reasonably incurred in any [FOIA] case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i) (2012).[2]  The plaintiff argues that it substantially prevailed in this case, and therefore is eligible for an award of attorneys' fees and costs, because the defendant "would not have produced the determination [that there are no records responsive to the plaintiff's FOIA request] absent [its] Complaint."  Pl.'s Mem. at 6.

A FOIA plaintiff is considered a substantially prevailing party if it obtains "a voluntary or unilateral change in position by the agency, if [its] claim is not insubstantial." § 552(a)(4)(E)(ii)(II).  In other words, under what has been identified as the "catalyst theory," a FOIA plaintiff is deemed a substantially prevailing party and "can obtain an award of costs and fees if 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation.'"  Harvey v. Lynch, 178 F. Supp. 3d 5, 7 (D.D.C. 2016) (alteration in original) (quoting Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587 (D.C. Cir. 1981)), aff'd, No. 16-5200, 2017 WL 4220323 (D.C. Cir. July 14, 2017).  Therefore,

> [t]o show that [its] lawsuit was the "catalyst" for an agency's provision of responsive records, a FOIA requester "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a casual nexus exists between that action and the agency's surrender of the information."

Id. (quoting Church of Scientology of Cal., 653 F.2d at 588).  Ultimately, whether a plaintiff has substantially prevailed is a factual determination that is decided by the Court.  See Cox v. U.S. Dep't of Justice, 601 F.2d 1, 6 (D.C. Cir. 1979), overruled by Kay v. Ehrler, 499 U.S. 432

---

[2] "This language naturally divides the attorney-fee inquiry into two prongs, which [this Circuit's] case law has long described as fee 'eligibility' and 'fee entitlement.'"  Brayton v. Office of U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011) (quoting Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  Pertinent to the Court's analysis here, the question of "whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees" is resolved under the eligibility prong.  Id. (quoting Judicial Watch, Inc., 470 F.3d at 368).

(1991), as recognized in Nat'l Sec. Counselors v. CIA, 811 F.3d 22 (D.C. Cir. 2016).

Here, the Court finds that the initiation and prosecution of this litigation was not a "catalyst" for the defendant producing its determination to the plaintiff that there were no records responsive to its FOIA request.[3]  The plaintiff argues that it has substantially prevailed in this litigation because the defendant failed to respond to its FOIA request within the statutory deadline, see Pl.'s Mem. at 6, and also because the defendant did not make a determination regarding its FOIA request until after the plaintiff filed its Complaint in this matter, see id. at 5. In regards to the tardiness argument, "[a]s th[is] [ ] Circuit has observed, 'both the plethora of [FOIA] cases pending before federal agencies at any given time[ ] and the time-consuming nature of the search and decision process' would make a strict-liability rule for agencies that miss the [twenty]-day FOIA deadline both unnecessarily harsh and potentially quite expensive." Harvey, 178 F. Supp. 3d at 8 (fourth and fifth alterations in original) (quoting Cox, 601 F.2d at 6).  And, because "[t]he mere filing of [a] complaint and the subsequent release of the documents is insufficient to establish causation," Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (first alteration in original) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984)), the same is true when an agency responds that its search failed to discover any responsive documents.  Therefore, the Court finds the tardiness argument unpersuasive.

The plaintiff also asserts that the "[l]itigation was necessary to obtain a determination

---

[3] In its motion, the plaintiff primarily relies on Electronic Privacy Information Center as support for its position that it is a substantially prevailing party under the catalyst theory.  See Pl.'s Mem. at 5–6.  However, the Court finds the present circumstances distinguishable from those in Electronic Privacy Information Center.  This is mainly because, in Electronic Privacy Information Center, the defendant "conceded that [it] 'accelerated' the search for responsive records after [the plaintiff] filed its Complaint," 218 F. Supp. 3d at 42, while the defendant here has not made any such concession.  Additionally, unlike the court in Electronic Privacy Information Center, this Court is convinced that the defendant here "would [ ] have gotten the job done without the Court's supervision," id. at 43, which the Court addresses further in its Order.

from [the d]efendant."  Pl.'s Reply at 3; see also id. at 2–3 ("After nine months and repeated phone calls with [the defendant] informing [it] that [the defendant] w[as] working on the request, [it] reasonably believed that [the defendant] would not provide a determination without the initiation of litigation." (internal quotation marks omitted)).  It is true that "a significant delay by the agency in complying with [the] FOIA may provide the 'inference that the agency forgot about, or sought to ignore, a FOIA requester's request[,] and in such a case[,] an award of [FOIA] costs and fees would be appropriate.'"  Elec. Privacy Info. Ctr., 218 F. Supp. 3d at 41 (fourth alteration in original) (quoting Weisberg, 745 F.2d at 1496); see also id. ("Indeed, an agency's 'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with [the] FOIA." (quoting Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs., 794 F. Supp. 2d 29, 38 (D.D.C. 2011))).  But, where, as is the situation here, "disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing and the plaintiff cannot be deemed a 'prevailing party.'"  Id. (quoting Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 83 F. Supp. 3d 297, 303 (D.D.C. 2015)).

        The plaintiff does not dispute that the defendant began processing its FOIA request well in advance of the filing of its Complaint.  See Pl.'s Reply at 2 (not disputing that the defendant began processing its FOIA request and searching for responsive records between September and October 2016.  Additionally, the plaintiff neither disputes that the defendant's Office had completed an initial search for responsive documents in October 2016, although those search results were never relayed to the defendant or the plaintiff, or that the defendant was actively processing its FOIA request when it filed its Complaint.  See id. (presenting an undisputed timeline showing that the defendant had submitted a second search request to the Office, was

consistently inquiring about the status of the Office's processing of that search request, and made an effort to inform the plaintiff of the status of its processing of the plaintiff's FOIA request). Consequently, although the Office completed the processing of the defendant's search request and informed the defendant of the results within one week after learning that the plaintiff had filed suit, see Sun Decl. ¶¶ 16–17, the processing of the plaintiff's "FOIA request had already been completed by the time [it] had filed suit[, and therefore, [the plaintiff's] lawsuit, at most, prompted the [Office and the defendant's FOIA official] who was handling that request to wrap up work that had already been taken almost to completion." Harvey, 178 F. Supp. 3d. at 8.

Moreover, while the defendant did delay providing the plaintiff a response to its FOIA request, the Court cannot say that the defendant's delay was unreasonable or the result of the lack of due diligence. See Cox, 601 F.2d at 6 ("If . . . an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit."). The defendant cites "a number of reasons for the delay in communicating the search results to [the p]laintiff." Sun Decl. ¶ 19. First, the defendant notes that it "is a small agency . . . with approximately a dozen full-time employees in addition to federal employees from other agencies who serve on temporary details," and is only "able to allocate one-third of the time of one full-time employee to process all agency FOIA requests." Id. ¶ 20. Further, during the processing of the plaintiff's FOIA request, the defendant's FOIA officer, who was initially working on the request, "left in early December 2016 and was not replaced until approximately one month later." Id. In addition, the defendant "underwent several infrastructure migrations implemented by the [Office]," including the migration of a new e-discovery software system, which "had a direct impact on . . . search[ing] and process[ing] electronic records." Id. ¶ 22; see

also id. (noting that the infrastructure migrations were implemented "[f]rom mid-2016 to January 2017," and that the migration of the new e-discovery software "was not fully completed until about April 2017").  Lastly, the defendant notes that "[f]rom approximately mid-2016 until April 2017, the [Office] undertook the enormous task of transferring eight years of records to the National Archives," which included "the mammoth task of archiving over a petabyte (one quadrillion bytes) of electronic data from the forty-fourth presidential administration."  Id. ¶ 23. According to the defendant, this task "significantly hindered the [Office's] ability to provide search results to [the defendant]," particularly because the Office "provided th[e same] type of support . . . to numerous other components/agencies within the [Executive Office]."  Id.

Based on these representations, "the Court is persuaded that [the] defendant made a good faith effort to search for information and respond to [the] plaintiff['s FOIA] request."  Calypso Cargo Ltd. v. U.S. Coast Guard, 850 F. Supp. 2d 1, 5 (D.D.C. 2011), aff'd, No. 12-5165, 2012 WL 10236551 (D.C. Cir. 2012); see also Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 272 F. Supp. 3d 49, 53–54 (D.D.C. 2017) ("[A]n agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors.").  And contrary to the plaintiff's contention that the defendant did not exercise due diligence, see Pl.'s Reply at 5–6, the "[d]efendant's declaration[] make[s] clear that the delay in the [defendant's] release was not due to intransigence, but rather was the result of a diligent, ongoing process that began before the initiation of the instant lawsuit," Calypso Cargo Ltd., 850 F. Supp. 2d at 5–6.  More importantly, as the Court previously noted, the defendant remained entirely "transparen[t to the plaintiff] regarding its response to [the

plaintiff's] FOIA request," Elec. Privacy Info. Ctr., 218 F. Supp. 3d at 43, as the defendant made an effort to inform the plaintiff of the status of its processing of the plaintiff's FOIA request, see Pl.'s Reply at 2.[4]

In sum, in its assessment of whether "extrinsic factors, rather than the plaintiff's lawsuit, caused the [defendant's] release of [its determination to the plaintiff]", Elec. Privacy Info. Ctr., 218 F. Supp. 3d at 41; see also id. (evaluating "whether the agency made a good faith effort to search out material and pass on whether it should be disclosed; [ ] whether the scope of request caused delay in disclosure; and [ ] whether the agency was burdened with other duties that delayed its response" (quoting Conservation Force v. Jewell, 160 F. Supp. 3d 194, 205 (D.D.C. 2016))), the Court concludes that there is no "inference [that can be inferred from the record] that the plaintiff's lawsuit caused" the defendant to release its determination to the plaintiff, see Conservation Force, 160 F. Supp. 3d at 206, or that the plaintiff obtained the relief it sought through a "a voluntary or unilateral change in position by the [defendant]," § 552(a)(4)(E)(ii)(II).[5]

### III. CONCLUSION

For the foregoing reasons, the Court finds that the plaintiff is not a substantially prevailing party eligible for an award of attorneys' fees and costs under the FOIA.  Accordingly,

---

[4] The plaintiff contends that the defendant's "reasons for the 'delayed administrative process' . . . are specifically excluded from the 'exceptional circumstances' exemption in FOIA."  Pl.'s Reply at 6; see also id. (stating that "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section" (quoting 5 U.S.C. § 552(a)(6)(C)(ii))).  The Court disagrees, particularly because the delays from the migration of a new e-discovery software and the reliance on the Office, which had other agencies to likewise assist and the daunting task of archiving a petabyte of electronic data related to the forty-fourth presidential administration, are not "delay[s] that result[] from a predictable agency workload."  § 552(a)(6)(C)(ii).

[5] Having concluded that the plaintiff did not obtain the relief it sought through "a voluntary or unilateral change in position by the [defendant]," § 552(a)(4)(E)(ii)(II), the Court need not address the defendant's argument that the plaintiff did not substantially prevail because it did not receive any responsive documents, see Def.'s Opp'n at 7–8 ("[The p]laintiff did not successfully obtain any of the orders it requested from this Court, much less obtain any of the nonexistent documents it requested.").

it is hereby

**ORDERED** that the Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 13, is

**DENIED**.  It is further

**ORDERED** that, upon consideration of the plaintiff's Notice of Voluntary Dismissal,

ECF No. 12, this case is **DISMISSED WITHOUT PREJUDICE**.  It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 14th day of March, 2018.

REGGIE B. WALTON
United States District Judge
